| | | |
|---|---|---|
| ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>TRIBUNAL DE APELACIONES<br>PANEL VII | | |
| ELECTRICAL PROFESSIONAL SERVICES, INC.<br><br>Recurrente<br><br>v.<br><br>JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE TRUJILLO ALTO<br><br>Recurrido<br><br>J.P. INDUSTRIAL SALES CO., INC.<br><br>Parte con interés | TA2025AP00531 | *Revisión Administrativa* procedente de la Junta de Subastas del Municipio Autónomo de Trujillo Alto<br><br>Subasta 26-003<br><br>Sobre: Adquisición de materiales para el proyecto de expansión del Programa de Reciclaje |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón.

Rodríguez Casillas, juez ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 21 de enero de 2026.

Comparece **Electrical Professional Services, Inc.**, ("EPS" o "parte Recurrente") mediante el recurso de apelación —que correctamente acogemos como un recurso de revisión judicial— para solicitarnos la revocación de la **Carta Enmendada – Enmienda la Resolución de Adjudicación**, notificada a las partes el 30 de octubre de 2025, a través de la **Junta de Subastas del Municipio Autónomo de Trujillo Alto** ("Junta de Subastas" o "parte Recurrida") que enmendó la Resolución de Adjudicación previamente notificada sobre la Subasta Formal 26-003 ("Subasta") —para la Adquisición de Materiales para el Proyecto de Expansión del Programa de Reciclaje, celebrada el 10 de septiembre de 2025 y notificada el 2 de octubre de 2025— ("Notificación de Adjudicación"),

que adjudicó la Subasta a favor de J.P. Industrial Sales Co, Inc. ("JPI" o Parte con Interés).

Por los fundamentos que a continuación expresamos, **confirmamos** la Carta Enmendada – Enmienda la Resolución de Adjudicación.

**-I-**

El **13 de agosto de 2025**, el Municipio Autónomo de Trujillo Alto ("Municipio" o "parte Recurrida"), como recipiente de los fondos de la Subvención de Infraestructura de Residuos Sólidos para el Programa de Reciclaje (SWIFR, por sus siglas en inglés), administrados por la Agencia de Protección Ambiental de los EE.UU. (EPA, por sus siglas en inglés), publicó un Aviso de Subasta #26-003 ("Subasta"), para solicitar propuestas para la adquisición de un contenedor de reciclaje ("bins") para recogido de materiales domésticos en residencias de 32 y/o 48 galones con tapa (entre 25,000 a 30,000 unidades).[1]

El **Aviso de Subastas** indicaba la siguiente información: fecha y hora para la disponibilidad de los documentos de la **Subasta**; la fecha límite y el correo electrónico para presentar preguntas o solicitar aclaraciones sobre el proceso; la fecha en la que se estarían proveyendo las respuestas; la fecha límite y el lugar para la entrega de las licitaciones; y la fecha y lugar de la apertura. En el **Pliego de Condiciones y Especificaciones** se estableció que **todos** los licitadores debían someter sus propuestas y acompañarlas de una fianza provisional ("bid bond") de $300.00, con una vigencia mínima de noventa (90) días. Asimismo, se advirtió que la **Junta de Subastas** podía rechazar cualquier oferta que no cumpliera con los requisitos o que no favoreciera el interés público.[2]

---

[1] Anejo 1 del Recurso.
[2] Anejo 2 del Recurso.

El **22 de agosto de 2025**, la empresa **EPS** sometió al **Municipio** un listado de 17 preguntas técnicas relacionadas con las especificaciones del equipo.[3]

El **28 de agosto de 2025**, el **Municipio** emitió sus respuestas oficiales, precisando —entre otros aspectos— que los recipientes debían tener ruedas integradas, tapas fijas con bisagra, drenajes de una pulgada y ser 100% reciclables.[4]

Mediante, **Adenda Núm. 1** del **4 de septiembre de 2025**, la **Junta de Subastas** pospuso la apertura de ofertas para el **10 de septiembre de 2025**.[5]

Así, el **10 de septiembre de 2025**, se celebró el **Acto de Apertura** en el que participaron **EPS** y **JPI**. Cabe destacar que ambas empresas sometieron propuestas para los contenedores de 32 y 48 galones.

En consecuencia, el **17 de septiembre de 2025**, el Programa de Reciclaje del Municipio remitió a la **Junta de Subastas** su **Evaluación y Recomendación**.[6] Allí, comparó las ofertas y concluyó que **EPS** había omitido especificaciones esenciales, entre ellas, las medidas, peso, material, tipo de tapa, ruedas y garantía, consignando reiteradamente **"no especificado"** en los pliegos. Por su parte, **JPI** presentó fichas técnicas completas y ofreció contenedores de 32 galones con ruedas a $55.55 por unidad y de 48 galones a $62.75, ambos con entrega entre 10 y 14 semanas.

A continuación, se presenta una tabla comparativa de ofertas para la **Subasta Pública** #26-003:

---

[3] Anejo 3 del Recurso.
[4] Anejo 4 del Recurso.
[5] Anejo 5 del Recurso.
[6] Anejo 7 del Recurso.

| SUBASTA PUBLICA #26-003 / ADQUISICION DE MATERIALES PARA EL PROYECTO DE EXPANSION DEL PROGRAMA DE RECICLAJE | | | | |
| --- | --- | --- | --- | --- |
| INFORMACION SOMETIDA / PLIEGO DE SUBASTA | LICITADOR | | | |
| | ELECTRICAL PROFESSIONAL SERVICES INC | | J.P. INDUSTRIAL SALES CO., INC. | |
| Capacidad: | 32 galones | 48 galones | 32 galones | 48 galones |
| Altura (con tapa): | no especificado | no especificado | data adjunta / Triple Rcan | data adjunta / Rugged Rim |
| Ancho: | no especificado | no especificado | data adjunta / Triple Rcan | data adjunta / Rugged Rim |
| Profundidad: | no especificado | no especificado | data adjunta / Triple Rcan | data adjunta / Rugged Rim |
| Peso (vacio): | no especificado | no especificado | data adjunta / Triple Rcan | data adjunta / Rugged Rim |
| Color: | no especificado | no especificado | data adjunta / Triple Rcan | data adjunta / Rugged Rim |
| Unidades: | 25,000 | 30,000 | 25,000 | 30,000 |
| Drenaje: | no especificado | no especificado | 4 huecos | data adjunta / Rugged Rim |
| Tapa: | no especificado | no especificado | data adjunta / Triple Rcan | incluida |
| Garantía: | no especificado | no especificado | data adjunta / Triple Rcan | data adjunta / Rugged Rim |
| Tiempo de Entrega: | 130 días | 130 días | 10 -14 semanas | 10 -14 semanas |
| Costo / Precio: | $61.00 / unidad | $67.00 / unidad | $31.99 / unidad | $62.75 / unidad |
| 25,000 | $1,525,000.00 | $1,675,000.00 | $799,750.00 | $1,568,750.00 |
| 30,000 | $1,830,000.00 | $2,010,000.00 | no especificado / $959,700.00 | no especificado / con ruedas $1,882,500.00 |
| Calidad del Material: | no especificado | no especificado | 100 % reciclable | data adjunta / Rugged Rim |
| Rotulación: | no especificado | no especificado | incluido | data adjunta / Rugged Rim |

| SUBASTA PUBLICA #26-003 / ADQUISICION DE MATERIALES PARA EL PROYECTO DE EXPANSION DEL PROGRAMA DE RECICLAJE | | | | | |
| --- | --- | --- | --- | --- | --- |
| INFORMACION SOMETIDA / PLIEGO DE SUBASTA | LICITADOR | | | | |
| | ELECTRICAL PROFESSIONAL SERVICES INC | | J.P. INDUSTRIAL SALES CO., INC. | | |
| Capacidad: | 32 galones | 48 galones | 32 galones | 48 galones | 32 galones con Ruedas |
| Altura (con tapa): | no especificado | no especificado | data adjunta / Triple Rcan | data adjunta / Rugged Rim | data adjunta / Toter Built for Extremes |
| Ancho: | no especificado | no especificado | data adjunta / Triple Rcan | data adjunta / Rugged Rim | data adjunta / Toter Built for Extremes |
| Profundidad: | no especificado | no especificado | data adjunta / Triple Rcan | data adjunta / Rugged Rim | data adjunta / Toter Built for Extremes |
| Peso (vacio): | no especificado | no especificado | data adjunta / Triple Rcan | data adjunta / Rugged Rim | data adjunta / Toter Built for Extremes |
| Color: | no especificado | no especificado | data adjunta / Triple Rcan | data adjunta / Rugged Rim | data adjunta / Toter Built for Extremes |
| Unidades: | 25,000 | 30,000 | 25,000 | 30,000 | 25,000 |
| | no especificado | no especificado | 4 huecos | data adjunta / Rugged Rim | data adjunta / Toter Built for Extremes |
| Tapa: | no especificado | no especificado | data adjunta / Triple Rcan | incluida | incluida |
| Ruedas: | no especificado | no especificado | no incluida | no incluida | incluida |
| Garantía: | no especificado | no especificado | data adjunta / Triple Rcan | data adjunta / Rugged Rim | data adjunta / Toter Built for Extremes |
| Tiempo de Entrega: | 130 días | 130 días | 10 -14 semanas | 10 -14 semanas | 10 -14 semanas |
| Costo / Precio: | $61.00 / unidad | $67.00 / unidad | $31.99 / unidad | $62.75 / unidad | $55.55 / unidad |
| 25,000 | $1,525,000.00 | $1,675,000.00 | $799,750.00 | $1,568,750.00 | $1,388,750.00 |
| 30,000 | $1,830,000.00 | $2,010,000.00 | no especificado / $959,700.00 | no especificado / con ruedas $1,882,500.00 | no especificado / $1,666,500.00 |
| Calidad del Material: | no especificado | no especificado | 100 % reciclable | data adjunta / Rugged Rim | data adjunta / Toter Built for Extremes |
| Rotulación: | no especificado | no especificado | incluido | data adjunta / Rugged Rim | data adjunta / Toter Built for Extremes |

| TOTAL FONDOS DISPONIBLES EN PARTIDA / EPA | CAPACIDAD / CONTENEDOR | COSTO / UNIDAD | CAPACIDAD DE COMPRA / UNIDAD |
| --- | --- | --- | --- |
| $ 1,048,320.00 | 32 galones | $ 61.00 | 17,186 unidades |
| | 48 galones | $ 67.00 | 15,647 unidades |
| | 32 galones con tapa | $ 31.99 | 32,770 unidades |
| | 48 galones con tapa | $ 62.75 | 16,706 unidades |
| | 32 galones con tapa y ruedas | $ 55.55 | 18,872 unidades |

El **24 de septiembre de 2025**, la **Junta de Subastas** celebró reunión formal y acordó adjudicar la *buena pro* a **JPI** por ser el postor de precio más económico y cumplir con todas las especificaciones exigidas.

En lo pertinente, la **Junta de Subastas** expresó:

**CARTA DE EVALUACIÓN Y RECOMENDACIÓN DE LA SUBASTA NUM. 26-003 ADQUISICIÓN DE MATERIALES PARA EL PROYECTO DE EXPANSIÓN DEL PROGRAMA DE RECICLAJE**

La Junta de Subastas, luego de un exhaustivo análisis acordó adjudicar la buena pro a la Compañía J.P. Industrial Sales Co., por ser el licitador de precio más económico. Se le adjudica los contenedores de 32 galones por el precio de 31.99 por unidad. Con esta adjudicación esta Junta de Subastas protege el interés público, vela por los mejores intereses del Municipio y garantiza los servicios a nuestros ciudadanos. [7]

El **2 de octubre de 2025**, la **Junta de Subastas** emitió la **Notificación de Adjudicación** en la que otorgó la buena pro a **JPI**, disponiendo que el contrato sería efectivo tras su firma y registro ante la Oficina del Contralor de Puerto Rico, y que la empresa agraciada debía presentar la documentación fiscal y las certificaciones gubernamentales requeridas. En lo pertinente, la **Junta de Subastas** notificó a las partes el siguiente resumen:[8]

| SUBASTA PUBLICA # 26-003- ADQUISICIÓN DE MATERIALES PARA EL PROYECTO DE EXPANSIÓN DEL PROGRAMA DE RECICLAJE | | | | |
|---|---|---|---|---|
| INFORMACIÓN SOMETIDA PLIEGO DE SUBASTA | LICITADORES | | | |
| | ELECTRICAL PROFESIONAL SERV. INC. | | JP. INDUSTRIAL SALES CO, INC. | |
| Capacidad: | 32 galones | 48 galones | 32 galones | 48 galones |
| Altura (con Tapa) | no especificado | no especificado | data adjunta/Triple Rcan | data adjunta/Rugged Rim |
| Ancho: | no especificado | no especificado | data adjunta/Triple Rcan | data adjunta/Rugged Rim |
| Profundidad | no especificado | no especificado | data adjunta/Triple Rcan | data adjunta/Rugged Rim |
| Peso (vacío) | no especificado | no especificado | data adjunta/Triple Rcan | data adjunta/Rugged Rim |
| Color: | no especificado | no especificado | data adjunta/Triple Rcan | data adjunta/Rugged Rim |
| Unidades: | 25,000 | 30,000 | 25,000 | 30,000 |
| Drenaje: | no especificado | no especificado | 4 huecos | data adjunta/Rugged Rim |
| Tapa: | no especificado | no especificado | data adjunta/Triple Rcan | incluida |
| Garantía: | no especificado | no especificado | data adjunta/Triple Rcan | data adjunta/Rugged Rim |
| Tiempo de Entrega | 130 días | 130 días | 10-14 semanas | 10-14 semanas |
| Costo/Precio | $61.00/unidad | $67.00/unidad | $31.99/unidad | $62.75/unidad |
| 25,000 | $1,525,000.00 | $1,675,000.00 | $799,750.00 | $1,568.750.00 |
| 30,000 | $1,830.000.00 | $2,010,.000.00 | no especificado $959,700.00 | no especificado/ con ruedas $1,882,500.00 |
| Calidad del Material: | no especificado | no especificado | 100% reciclable | data adjunta/Rugged Rin |
| Rotulación: | no especificado | no especificado | incluido | data adjunta/ Rugged Rim |

Además, el **Municipio** especificó que cualquier licitador adversamente afectado contaba con un plazo jurisdiccional de diez (10) días para acudir ante este Tribunal de Apelaciones.

Inconforme, el **14 de octubre de 2025**, **EPS** compareció por **primera** vez ante nos en el caso núm. **TA2025RA00286**,[9] y adujo que la **Junta de Subastas** cometió los siguientes errores:

**PRIMER ERROR:** ERRÓ LA JUNTA DE SUBASTAS DEL MUNICIPIO DE TRUJILLO ALTO AL OTORGAR LA BUENA PRO DE

---

[7] Anejo 9 del Recurso.
[8] Anejo 11 del Recurso.
[9] Entrada Núm. 1 del caso *TA2025RA00286* en SUMACTA.

LA SUBASTA #26-003 A JP PARA LA COMPRA DE UN PRODUCTO QUE INCUMPLE CRASAMENTE CON LAS ESPECIFICACIONES Y LOS CRITERIOS ESTABLECIDOS POR EL PROPIO MUNICIPIO, CREANDO UNA DESIGUALDAD DE CONDICIONES ENTRE LOS LICITADORES.

**SEGUNDO ERROR:** ERRÓ LA JUNTA DE SUBASTAS DEL MUNICIPIO DE TRUJILLO ALTO AL CONSIDERAR Y EVALUAR LA OFERTA DE UN PRODUCTO QUE INCUMPLE CON LAS ESPECIFICACIONES DEL MUNICIPIO Y AL DETERMINAR, MOTU PROPRIO, QUE LA OFERTA PRINCIPAL DE JP PARA EL CONTENEDOR DE 32 GALONES CON RUEDAS ERA LA "PROPUESTA ADICIONAL", POR LO QUE NO FUE CONSIDERADA.

**TERCER ERROR:** ERRÓ LA JUNTA DE SUBASTAS DEL MUNICIPIO DE TRUJILLO ALTO AL OTORGAR LA BUENA PRO DE LA SUBASTA #26-003 A JP BASADO EN QUE SU PRECIO ERA PRESUNTAMENTE EL MÁS ECONÓMICO, CUANDO LOS PRECIOS PROPUESTOS POR JP NO INCLUYEN IMPUESTOS.

El **21 de octubre de 2025**, emitimos una *Resolución* en la cual concedimos un plazo de diez (10) días a la **Junta de Subastas** y a **JPI** para que presentaran sus respectivos alegatos en oposición.[10]

No obstante, el **31 de octubre de 2025,** la **Junta de Subastas** presentó una *MOCIÓN SOLICITANDO DESESTIMACIÓN POR ACADEMICIDAD, INFORMATIVA Y OTROS ASUNTOS*. En esencia, nos indicó que el **30 de octubre de 2025** había notificado a las partes una **CARTA ENMENDADA** - *ENMIENDA A LA RESOLUCIÓN DE ADJUDICACIÓN* con ciertas enmiendas que no había incluido en la **Notificación de Adjudicación** del **2 de octubre de 2025**.[11] En lo pertinente, la carta de enmienda expresó:

**CARTA ENMENDADA - ENMIENDA A LA RESOLUCIÓN DE ADJUDICACIÓN**

**30 de octubre de 2025**
**VÍA CORREO ELECTRÓNICO**

**ELECTRICAL PROFESSIONAL SERVICES, INC.**
HC-02 Box 14363, Carolina, PR 00987
Email: miltongarayua@yahoo.com

**J.P. INDUSTRIAL SALES CO., INC.**
902 Ave. Fernández Juncos, San Juan, PR 00907
Email: j.ortiz@jpindustrialpr.com

**RE: SUBASTA FORMAL NUM. 26-003 - ADQUISICIÓN DE MATERIALES PARA EL PROYECTO DE EXPANSIÓN DEL PROGRAMA DE RECICLAJE (CELEBRADA EL 10 DE SEPTIEMBRE DE 2025) NOTIFICACIÓN DE RESOLUCIÓN ENMENDADA**
Al amparo del Código Municipal de Puerto Rico, Ley Núm.. 107-2020, Libro Xl, Cap. V, Arts. 2.035 al 2.041 (en particular. Art. 2.041), del Reglamento para la Administración Municipal,

---

[10] Notificada el 22 de octubre de 2025.; Entrada Núm. 2 del caso *TA2025RA00286* en SUMACTA.
[11] Entrada Núm. 3 del caso *TA2025RA00286* en SUMACTA.

Reglamento Núm. 8873 (OCAM, 19 de diciembre de 2016) y del Reglamento de la Junta de Subastas del Gobierno Municipal Autónomo de Trujillo Alto (12 de diciembre de 2022), se enmienda de forma aclaratoria la Resolución de Adjudicación previamente notificada relacionada con la Subasta 26-003, publicada el 12 de agosto de 2025.

### I.       Antecedentes y motivo de la enmienda

El 12 de agosto de 2025 se publicó la Subasta 26-003 y las compañías mencionadas en el encabezado sometieron sus propuestas. **(Véase Resumen de las Ofertas Recibidas, Anejo I)** El pasado 22 de octubre de 2025, la Junta de Subastas del Gobierno Municipal Autónomo de Trujillo Alto, durante la verificación de cumplimiento previa al otorgamiento del contrato, **advirtió una omisión material en la descripción de los bienes adjudicados: en los contenedores de 32 galones no se consignó que debían incluir ruedas, conforme a los requisitos y evaluación técnica considerados**. Para reflejar fielmente el resultado de la evaluación y las especificaciones exigidas, procedemos a aclarar y corregir la descripción.

### II.      Enmienda aclaratoria (sin alterar el resultado de la adjudicación)

A la luz del expediente, **J.P. Industrial Sales Co., Inc**. resultó el postor de precio más económico para el renglón adjudicado y cumple con la especificación material de incluir ruedas en los contenedores de 32 galones. Su oferta es de $55.55 por unidad, con plazo de entrega de 10 a 14 semanas. En contraste, **Electrical Professional Services, Inc**. cotizó $61.00 por unidad y un plazo de 130 días.

**Electrical Professional Services, Inc.** no desarrolló la descripción técnica del equipo a suplir y omitió especificaciones esenciales, consignándolas como "no especificado" en renglones como altura, ancho, profundidad, peso, tapa, ruedas, garantía, color y calidad del material. Estas omisiones impiden corroborar el cumplimiento del pliego. **(Véase Anejo I - Resumen de Ofertas).**

Por lo anterior, la Junta de Subastas determinó adjudicar los contenedores con ruedas a **J.P. Industrial Sales Co., Inc**., por ser e! postor de precio más económico. Se adjudican contenedores de 32 galones con ruedas a $55.55 por unidad.

Se aclara que la adjudicación emitida a favor de **J.P. Industrial Sales Co., Inc. comprende contenedores de 32 galones con ruedas, al precio unitario de $55.55**. Esta aclaración no altera el resultado sustantivo de la adjudicación ni la conclusión sobre el postor de precio más económico, conforme a la comparación de ofertas que obra en el expediente **(Anejo I - Resumen de Ofertas).**

Con esta adjudicación, la Junta protege el interés público, tutela los mejores intereses del Municipio y garantiza la continuidad de los servicios a la ciudadanía.

### III. Determinación y próximos pasos
[…]
La efectividad del contrato será a partir de su otorgamiento, su vigencia y el cumplimiento de sus cláusulas, y luego de su radicación ante la Oficina del Contralor de Puerto Rico. El Municipio no registrará órdenes de compra hasta tanto transcurra el término de diez (10) días contados desde la fecha de depósito en el correo de la notificación de adjudicación.

### IV. Requisitos para la formalización del contrato
[…]
La adjudicación de la subasta podrá cancelarse si la persona autorizada a firmar el contrato no cumple con los requisitos que son exigidos en subastas como estas, sin que medie responsabilidad alguna para e! Gobierno Municipal Autónomo de Trujillo Alto.

### V. Advertencias

La adjudicación de la subasta podrá cancelarse si la persona autorizada a firmar el contrato no cumple con los requisitos exigidos, sin que medie responsabilidad alguna para el Municipio de Trujillo Alto.

### VI. Revisión judicial (termino y foro)

Todo licitador adversamente afectado por esta determinación tendrá derecho a acudir al Tribunal de Apelaciones a solicitar revisión judicial dentro del término jurisdiccional de diez (10) días contados a partir de la fecha de depósito en el correo de la notificación de adjudicación. Ese foro revisará, con exclusividad, la Resolución de Adjudicación.

### VII. Archivo y notificación

Se archiva en autos copia de esta Enmienda Aclaratoria el 30 de octubre de 2025, y se depositó en el correo el 30 de octubre de 2025, **siendo esta última la que activa el término jurisdiccional para acudir al Tribunal de Apelaciones**.
[…].[12]

El **7 de noviembre de 2025**, este Tribunal emitió y notificó una **Sentencia** en la que desestimó el recurso de revisión del caso núm. **TA2025RA00286** por tornarse académico. En lo pertinente, razonamos lo siguiente:

No obstante, resulta preciso mencionar que la Junta de Subastas presentó el **31 de octubre de 2025** un escrito intitulado *MOCIÓN SOLICITANDO DESESTIMACIÓN POR ACADEMICIDAD, INFORMATIVA Y OTROS ASUNTOS*.[13] En este, informó que el **30 de octubre de 2025,** había emitido una *CARTA ENMENDADA – ENMIENDA A LA RESOLUCIÓN DE ADJUDICACIÓN*.[14] En dicha carta enmendada, la recurrida señaló que:

*El pasado 22 de octubre de 2025, la Junta de Subastas del Gobierno Municipal Autónomo de Trujillo Alto, durante la verificación de cumplimiento previa al otorgamiento del contrato, advirtió una omisión material en la descripción de los bienes adjudicados: en los contenedores de 32 galones no se consignó que debían incluir ruedas, conforme a los requisitos y evaluación técnica considerados. Para reflejar fielmente el resultado de la evaluación y las especificaciones exigidas, procedemos a aclarar y corregir la descripción.[15]*

Por lo que, la Junta de Subastas nos señaló que la carta enmendada **corrigió** la descripción técnica de los contenedores sin alterar el resultado, ya que mantuvo a JPI como el licitador agraciado. Sin embargo, al emitir la *CARTA ENMENDADA - ENMIENDA A LA RESOLUCIÓN DE ADJUDICACIÓN* el **30 de octubre de 2025**, dicha Junta de Subastas volvió a notificarle a todas las partes y allí indicó que *"[t]odo licitador adversamente afectado por esta determinación tendrá derecho a acudir al Tribunal de Apelaciones a solicitar revisión judicial dentro del término jurisdiccional de diez (10) días contados a partir de la fecha de depósito en el correo de la notificación de adjudicación. Ese foro revisará, con exclusividad, la Resolución de Adjudicación."*

Por lo cual, al notificar el nuevo término de revisión judicial de la antes dicha enmienda a la resolución de la adjudicación, torno académico el recurso de revisión judicial de epígrafe, por lo que en este momento no tenemos jurisdicción para revisar los méritos de la adjudicación recurrida.[16]

---

[12] Entrada Núm. 6 del caso *TA2025AP00531* en SUMACTA. Énfasis nuestro.
[13] Véase, Entrada Núm. 6 del caso *TA2025RA00286* en SUMACTA.
[14] Véase, Anejo de la Entrada Núm. 6 del caso *TA2025RA00286* en SUMACTA.
[15] *Íd.*, a las págs. 1 – 2.
[16] Véase, las págs. 6-7 de la Sentencia en el caso *TA2025RA00286*.

Así, el **10 de noviembre de 2025**, **EPS** recurre ante nos, **por segunda vez**, en un nuevo recurso de apelación **TA2025AP00531**, que correctamente acogimos como una revisión judicial.[17] En esencia, nos solicita que revoquemos de la **Carta Enmendada – Enmienda a la Resolución de Adjudicación**, notificada a las partes el **30 de octubre de 2025**, por la **Junta de Subastas**. Indica los siguientes tres (3) errores:

> **PRIMER ERROR:** ERRÓ LA JUNTA DE SUBASTAS DEL MUNICIPIO DE TRUJILLO ALTO AL EMITIR LA CARTA ENMENDADA – ENMIENDA A LA RESOLUCIÓN DE ADJUDICACIÓN, LA CUAL CONTIENE ENMIENDAS SUSTANCIALES, SIN JURISDICCIÓN PARA ELLO.
>
> **SEGUNDO ERROR:** ERRÓ LA JUNTA DE SUBASTAS DEL MUNICIPIO DE TRUJILLO ALTO AL DETERMINAR, EN SU CARTA ENMENDADA, QUE EPS NO DESARROLLÓ LA DESCRIPCIÓN TÉCNICA DEL EQUIPO, CUANDO EPS SE LIMITÓ A SEGUIR LAS INSTRUCCIONES IMPARTIDAS DIRECTAMENTE POR EL MUNICIPIO Y LO CONTENIDO EN LAS CONDICIONES GENERALES DEL PLIEGO.
>
> **TERCER ERROR:** ERRÓ LA JUNTA DE SUBASTAS DEL MUNICIPIO DE TRUJILLO ALTO AL OTORGAR LA BUENA PRO DE LA SUBASTA #26-003 A JP BASADO EN QUE SU PRECIO ERA PRESUNTAMENTE EL MÁS ECONÓMICO, CUANDO SU OFERTA FUE CONDICIONADA, POR LOS PRECIOS PROPUESTOS NO INCLUIR IMPUESTOS.[18]

El **18 de noviembre de 2025**, ordenamos a la **Junta de Subastas** y a **JPI** a presentar sus respectivos alegatos. Además, ordenamos la paralización de la otorgación del contrato al licitador agraciado hasta que este Panel así lo determinara.[19]

El **26 de noviembre de 2025**, la **Junta de Subastas** presentó su *ALEGATO EN OPOSICIÓN A RECURSO DE REVISIÓN JUDICIAL.*[20] Por su parte, el **28 de noviembre de 2025**, **JPI** presentó su *OPOSICIÓN A RECURSO DE REVISIÓN JUDICIAL.*[21]

El **2 de diciembre de 2025**, dimos por perfeccionado el presente recurso para la consideración del Panel.[22]

---

[17] A manera de evitar más retrasos, no ordenamos el cambio de número alfanumérico.
[18] Entrada Núm. 1 del caso *TA2025AP00531* en SUMACTA.
[19] Entrada Núm. 2 del caso *TA2025AP00531* en SUMACTA.
[20] Entrada Núm. 3 del caso *TA2025AP00531* en SUMACTA.
[21] Entrada Núm. 4 del caso *TA2025AP00531* en SUMACTA.
[22] Entrada Núm. 7 del caso *TA2025AP00531* en SUMACTA.

**-II-**

**-A-**

En virtud del Artículo 4.002 de la Ley Núm. 201-2003, conocida como la **Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003**, se faculta a este Tribunal de Apelaciones a examinar, en materia de derecho, las decisiones finales de los organismos y agencias administrativas que se tramitan conforme a la Ley de Procedimiento Administrativo Uniforme.[23] Asimismo, en nuestra función apelativa, el Artículo 4.006 de la Ley Núm. 201-2003 dispone que la presentación de un recurso de revisión judicial —ante nos— no detiene los procedimientos administrativos.[24] Por ello, la **Regla 61 del Reglamento del Tribunal de Apelaciones** confirma que la presentación del recurso no tiene efecto suspensivo sobre la ejecución de una decisión administrativa, salvo que el Tribunal, mediante solicitud fundamentada, emita una orden en contrario. Dicha orden solo podrá emitirse después de escuchar a las demás partes o, en casos de urgencia, de manera temporal, con la oportunidad posterior de presentar alegaciones.[25]

En consecuencia, los tribunales apelativos estamos llamados a conceder amplia deferencia a las agencias administrativas, pues son estas quienes cuentan con la experiencia y el conocimiento especializado en los asuntos que les han encomendado.[26] A ese fin, la Sección 4.5 de la **Ley de Procedimientos Administrativo Uniforme del Gobierno de Puerto Rico** ("LPAU") establece que "*la revisión judicial de una actuación administrativa debe limitarse a evaluar la razonabilidad de la decisión recurrida, la cual deberá ser*

---

[23] 4 LPRA sec. 24(u).
[24] 4 LPRA sec. 24(y), inciso (c).
[25] Regla 61 del Reglamento del Tribunal de Apelaciones, según enmendada, *In Re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs.115 – 117, 215 DPR ____ (2025).
[26] *Moreno Lorenzo v. Departamento de la Familia*, 207 DPR 833, 839 (2021).

*sostenida a menos que se demuestre que es arbitraria o caprichosa".*[27]

De otra parte, la Sección 3.19 de la **LPAU** pauta los procesos de licitación pública y el término para solicitar la revisión de adjudicación administrativa en el trámite de agotar las vías administrativa hasta la revisión judicial por este Tribunal de Apelaciones.[28]

Ahora, es importante señalar que a los municipios **no** les aplican las disposiciones de la **LPAU**, ya que están expresamente excluidos de la definición de "Agencia".[29] No obstante, el Artículo 1.050 del **Código Municipal de Puerto Rico**,[30] nos faculta a revisar las determinaciones finales o adjudicación de la Junta de Subastas emitidas por los municipios.

A tono con lo antes dicho, y tocante a los procesos administrativos de Subastas, un licitador o participante de una Subasta Formal o un Requerimiento de Propuestas ("Request for Proposal") puede cuestionar mediante revisión judicial la adjudicación de una subasta,[31] bajo el mismo principio de la deferencia a las agencias administrativas.

**-B-**

En cuanto a las agencias y los municipios de Puerto Rico, es menester recordar que el objetivo de exigir que la contratación y las obras que realiza el Gobierno, se efectúen mediante el proceso de subasta, tiene como propósito primordial *proteger los intereses y el dinero público.*

---

[27] *Cruz v. Administración,* 164 DPR 341, 355 (2005).; *Ramírez v. Departamento de Salud,* 147 DPR 901 (1999).; *Véase, además,* Ley Núm. 38 – 2017, según enmendada, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* 3 LPRA sec. 9675.

[28] 3 LPRA sec. 9659.

[29] *Puerto Rico Eco Park, Inc. v. Municipio de Yauco,* 202 DPR 525, 533 (2019). *Véase, además,* 3 LPRA sec. 9603.

[30] Ley Núm. 107-2020, según enmendada, conocida como *Código Municipal de Puerto Rico,* 21 L.P.R.A. sec. 7081.

[31] *Id.,* a las págs. 532-533 citando *R & B Power v. ELA,* 170 DPR 606, 624 (2007).

Es decir, a través de las Subastas se protegen los intereses del Pueblo de Puerto Rico, ya que procuran conseguir *los precios más económicos; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento.*[32]

Cabe indicar, que las Subastas que se adjudican por una Junta de Subastas Municipal, están reguladas por el **Código Municipal de Puerto Rico** ("Código Municipal"),[33] y el **Reglamento para la Administración Municipal 2016, Núm. 8873** ("Reglamento Núm. 8873").[34] Estas normas también regulan el derecho de revisión judicial de los licitadores o participantes.[35]

Así, en nuestro ordenamiento jurídico, queda a discreción de cada Municipio, como entidad con el conocimiento especializado, aprobar un reglamento que establezca el procedimiento y las guías a seguir en sus propias subastas.[36] Sin embargo, existen unos criterios básicos que deben ser respetados.

Como norma general, un Municipio adjudicará una Subasta sobre suministros de servicio, de compras o de construcción al postor más bajo. Esto es así puesto que, al estar de por medio el desembolso de fondos públicos, se debe promover la inversión adecuada, responsable y eficiente de los recursos económicos del Estado.[37]

Como indicamos antes, el objetivo de la Subasta es proteger el erario *"consiguiendo la construcción de obras públicas y la adquisición de servicios de calidad para el Gobierno al mejor precio*

---

[32] *Puerto Rico Eco Park, Inc. v. Municipio de Yauco, supra*, pág. 531. *Énfasis nuestro.*
[33] Ley Núm. 107-2020, según enmendada, conocida como *Código Municipal de Puerto Rico*, 21 LPRA sec. 7001 *et seq.*
[34] *Reglamento para la Administración Municipal 2016 Núm. 8873 de la Oficina del Comisionado de Asuntos Municipales* de 19 de diciembre de 2016.
[35] *Puerto Rico Eco Park, Inc. v. Municipio de Yauco, supra*, pág. 534.
[36] *AEE v. Maxon*, 163 DPR 434, 440 (2004).
[37] *Id.*, a las págs. 440 – 441.; *Aut. Carreteras v. CD Builders, Inc.*, 177 DPR 398, 404 (2009).

*possible"*.[38] La consideración primordial al momento de determinar quién debe resultar favorecido en el proceso de adjudicación de subastas debe ser el interés público en proteger los fondos del Pueblo de Puerto Rico.[39]

Cónsono con lo anterior, el Artículo 2.040 del **Código Municipal**, dispone que:

> La Junta entenderá y adjudicará todas las subastas que se requieran por ley, ordenanza o reglamento y en los contratos de arrendamiento de cualquier propiedad mueble o inmueble y de servicios, tales como servicios de vigilancia, mantenimiento de equipo de refrigeración entre otros.[40]

También, en el precitado Artículo 2.040 en su inciso (a), se establecen los criterios de adjudicación:

> **a.** *Criterios de adjudicación* — Cuando se trate de compras, construcción o suministros de servicios, la Junta adjudicará a favor del postor razonable más bajo. [...] La Junta hará las adjudicaciones tomando en consideración **que las propuestas sean conforme a las especificaciones**, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, **la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta**.
>
> La Junta podrá adjudicar a un postor que no sea necesariamente el más bajo ... si con ello se beneficia el interés público. En este caso, la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación. [...].[41]

Además, en el referido Artículo 2.040 en su inciso (b), se desglosan los criterios para rechazar pliegos de subastas:

> **b.** *Causas para rechazar pliegos de subastas* — La Junta de Subasta podrá rechazar la licitación o las licitaciones que se reciban como resultado de una convocatoria, cuando considere que el licitador carece de responsabilidad o tiene una deuda con el municipio o el Gobierno de Puerto Rico o Gobierno federal **o que la naturaleza o calidad de los suministros, materiales o equipo no se ajustan a los requisitos indicados en el pliego de la subasta, o que los precios cotizados se consideren como**

---

[38] *RBR Const., SE v. AC,* 149 DPR 836, 848 – 849 (1999).
[39] *Cordero Vélez v. Municipio de Guánica,* 170 DPR 237, 245 (2007).
[40] 21 LPRA sec. 7216.
[41] *Id.,* en el inciso (a). Énfasis nuestro.

**irrazonables o cuando el interés público se beneficie con ello**.[42]

Por otro lado, la Sección 1 del **Reglamento Núm. 8873** recoge el principio de competencia en las subastas municipales. En específico, establece:

Toda compra de materiales, suministros, comestibles, servicios, medicinas, equipo y todo contrato para cualquier construcción, obra o mejora pública **se efectuará mediante competencia al postor responsable cuya oferta sea más ventajosa al Gobierno Municipal, considerando el precio y las especificaciones, términos y estipulaciones requeridas**.[43]

Por su parte, la Sección 11 del **Reglamento Núm. 8873** dispone que, como norma general de adjudicación, las subastas se adjudicarán a favor del licitador que esté respaldado por un buen historial de capacidad y cumplimiento con los siguientes requisitos:

(a) Que cumpla con los requisitos y condiciones de los pliegos de especificaciones.
(b) Que sea la más baja en precio o que aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o se justifique el beneficio de interés público de esa adjudicación.
De adjudicarse a favor de un licitador que no haya ofrecido el costo más bajo, la Junta de Subastas deberá hacer constar por escrito las razones que justifican la adjudicación. Dicha justificación escrita deberá estar firmada por los miembros de la Junta de Subasta que la favorecieron y debe permanecer en el expediente para fines de auditoria futura.[44]

En cuanto a la adjudicación de la *buena pro*, la Sección 10 del **Reglamento Núm. 8873**, establece que la **Junta de Subastas** tendrá que determinar las ofertas susceptibles de ser consideradas para la adjudicación, tomando como guía las normas establecidas en el Reglamento, así como en la información del Acta de Apertura y el Informe del Recaudador.[45]

Además, en la precitada Sección 10 del **Reglamento Núm. 8873**, se añade que:

---

[42] *Id.*, en el inciso (b). Énfasis nuestro.
[43] Cap. VIII, Parte I, Sec. 1: Principio de Competencia, Reglamento Núm. 8873. Énfasis nuestro.
[44] Cap. VIII, Parte II, Sec. 11: Norma General de Adjudicación, Reglamento Núm. 8873.
[45] Cap. VIII, Parte II, Sec. 10: Orden General de Proceder con la Adjudicación, Reglamento Núm. 8873.

Luego de hacer esa determinación preliminar, la Junta procederá a verificar en las ofertas susceptibles de ser evaluadas, cuáles han cumplido con las especificaciones y condiciones solicitadas en la subasta.[46]

Cabe destacar que, una vez se realiza la apertura de los pliegos de la Subasta Pública, el inciso (4) de la Sección 9 del **Reglamento Núm. 8873**, dispone que:

No se permitirá bajo ninguna circunstancia, efectuarse cambios o modificaciones a una oferta después de haber sido abierta y leída en público.[47]

En concreción, la revisión judicial en los casos de Subastas se limita a determinar si la adjudicación al licitador agraciado es razonable y se sostiene con la evidencia sustancial que obra en el expediente.[48]

No obstante, en caso de estimarlo, el inciso (9) de la Sección 12 del **Reglamento Núm. 8873**, faculta al Municipio a cancelar o rechazar las propuestas recibidas para la Subasta, antes o después de celebrada la misma:

Se podrá cancelar o dejar sin efecto la subasta y rechazar las proposiciones recibidas para una subasta, antes o después de celebrada la misma, siempre y cuando el municipio fundamente razonablemente su petición y lo notifique por escrito a todos los licitadores o personas interesadas.[49]

**-C-**

Sabido es que en Puerto Rico, las adquisiciones realizadas por el Estado Libre Asociado y sus instrumentalidades públicas —en la que se incluyen a los municipios— están expresamente exentas del pago del Impuesto sobre Ventas y Uso ("IVU").

En específico, esta exención del **IVU** surge del inciso (a) de la Sección 4030.08 del **Código de Rentas Internas para un Nuevo Puerto Rico**.[50] En lo pertinente, la precitada Sección 4030.08

---

[46] *Id.*

[47] Cap. VIII, Parte II, Sec. 9: Apertura de los Pliegos de Subasta Pública, Reglamento Núm. 8873.

[48] *Caribbean Communication v. Pol. de PR*, 176 DPR 978, 1006 (2009).

[49] Cap. VIII, Parte II, inciso (9) Sec. 12: Cancelación de la Subasta, Reglamento Núm. 8873.

[50] Ley Núm. 1-2011, según enmendada al 30 de julio de 2025. 13 LPRA sec. 32058.

dispone que: *"estará exenta del pago del impuesto sobre ventas y uso [...] toda partida tributable adquirida para uso oficial por [...] el Gobierno del Estado Libre Asociado de Puerto Rico".*[51]

Es decir, esta exención incluye —no solo a las agencias y corporaciones públicas— sino también a los municipios, que son instrumentalidades gubernamentales creadas por ley para ejercer funciones públicas a nivel local.

Nótese, que la amplitud del lenguaje legislativo confirma que ninguna partida tributable adquirida por un municipio para uso oficial está sujeta al **IVU**. Esta disposición excluye categóricamente el cobro del impuesto a cualquier compra municipal, independientemente de su naturaleza o propósito, siempre que esté destinada al ejercicio de **funciones oficiales**.

Lo antes expresado, se complementa con la **Carta Circular de Finanzas Públicas Núm. 1300-51-25** ("Carta Circular"), emitida por el Departamento de Hacienda el 7 de mayo de 2025, la cual reafirma que: *"las agencias gubernamentales están exentas del pago de IVU sobre toda partida tributable adquirida para uso oficial".*[52]

Aunque el lenguaje de la **Carta Circular** se refiere a "agencias gubernamentales", el Departamento de Hacienda ha interpretado consistentemente ese término como abarcador de todas las instrumentalidades del Estado Libre Asociado que operan con fondos públicos, incluyendo los municipios. Es por esa razón, que esta **Carta Circular** regula los procedimientos para que los proveedores apliquen la exención, exigiendo únicamente que el municipio presente la certificación correspondiente.

---

[51] 13 LPRA sec. 32058(a).
[52] Véase, **Carta Circular de Finanzas Públicas Núm. 1300-51-25**, a la dirección: hacienda.pr.gov/publicaciones/carta-circular-de-finanzas-publicas-num-1300-51-25

**-III-**

En esencia, **EPS** nos señala que la **Junta de Subastas** cometió tres (3) errores; a saber: **(1)** que actuó sin jurisdicción al emitir la *Carta Enmendada – Enmienda a la Resolución de Adjudicación*, notificada a las partes el 30 de octubre de 2025; **(2)** al determinar que la parte **Recurrente** no desarrolló la descripción técnica del equipo; y **(3)** al otorgarle la Subasta a **JPI** basado en una oferta de precio que no incluyó el impuesto del **IVU**. No le asiste la razón.

**En primer orden**, la **Junta de Subastas** actuó con jurisdicción al emitir la **Carta Enmendada – Enmienda la Resolución de Adjudicación**, notificada a las partes el 30 de octubre de 2025 en el pasado recurso de revisión judicial núm. **TA2025RA00286**. Como indicamos antes, la presentación de un recurso de revisión judicial ante este Tribunal no paraliza los procedimientos administrativos, a menos que expresamente dispongamos su paralización; cosa, que en ese caso no sucedió. Todavía más, el inciso (9) de la Sección 12 del **Reglamento Núm. 8873**, faculta al **Municipio** a cancelar o rechazar las propuestas recibidas para la Subasta, <u>antes</u> o <u>después</u> de celebrada la misma. Bajo ese palio, cabe la máxima de "quien puede lo más, puede lo menos". Máxime, cuando la consabida enmienda fue debidamente explicada y fundamentada por el **Municipio**. De hecho, no podemos pasar por alto que **EPS** no recurrió al Tribunal Supremo de Puerto Rico para revisar nuestra Sentencia de desestimación en dicho caso **TA2025RA00286**, por lo que a esta fecha la misma es final y firme. Por lo tanto, el primer señalamiento de error no se cometió.

**En segundo orden**, la parte **Recurrente** nos indica que la **Junta de Subastas** erró al determinar que esa parte no desarrolló la descripción técnica del equipo. No tiene razón.

De entrada, **EPS** admite que no indicó en el Pliego de Subastas las siguientes especificaciones en términos de: la capacidad, la

altura, el ancho, la profundidad, el peso, el color, el drenaje, la tapa, la garantía, la calidad del material y la rotulación de los contenedores de reciclaje ("bins"). Es decir, en las especificaciones antes dicha la parte **Recurrente** se limitó a indicar "no especificado" y, —contrario a **JPI** que cumplió con desglosar todas las referidas especificaciones— **EPS** solo indicó los costos de los contenedores y el tiempo de entrega.[53] Si bien es cierto que en las **Condiciones Generales de Subastas** obran las citadas especificaciones,[54] no es menos cierto que una oferta plagada de "no especificado" impide a la **Junta de Subastas** realizar la evaluación comparativa que le requiere el inciso (a) del Artículo 2.040 del **Código Municipal** de considerar si las propuestas cumplen con las "especificaciones técnicas" y la calidad del producto ofertado, entre otros criterios. Nótese, que el derecho aplicable no obliga a la **Junta de Subastas** a interpretar de manera favorable ofertas incompletas, ni a suplir deficiencias técnicas en beneficio de un licitador. Antes bien, exige adjudicar únicamente entre propuestas "bajas y razonables" que cumplan con todas las especificaciones del pliego, condición que **EPS** no cumplió.

Sin duda alguna, la oferta de **JPI** estuvo acompañada de las fichas técnicas completas, lo que permitió una evaluación conforme al marco normativo aquí expuesto.

Por lo tanto, la conclusión de la **Junta de Subastas** sobre la deficiencia de **EPS** en no desarrollar la descripción técnica completa del equipo, no constituyó un error, sino por el contrario, una acción de estricto cumplimiento con su deber legal. En fin, el segundo señalamiento de error no se cometió.

---

[53] Véase, la tabla de Información del Pliego de Subastas de los licitadores en la pág. 5 de esta Sentencia y en el Anejo 11 del Recurso.
[54] Véase, págs. 4-5 del Anejo 2 del Recurso.

**En tercer y último orden**, la parte **Recurrente** indica que la **Junta de Subastas** erró al otorgarle la *buena pro* a **JPI**, basado en una oferta de precio que no incluyó el impuesto del **IVU**. No tiene razón.

Como indicamos, la Sección 4030.08 del **Código de Rentas Internas**, dispone que toda partida tributable adquirida "para uso oficial" por el Estado Libre Asociado de Puerto Rico —incluyendo sus instrumentalidades y municipios— está exenta del **IVU**. La precitada Sección 4030.08, está apoyada por la **Carta Circular de Finanzas Públicas Núm. 1300-51-25**, que reafirma esta exención. Es decir, esta norma no contiene excepción alguna aplicable a los procesos de adquisición municipal, ni permite interpretar que la ausencia del **IVU** en la oferta de esta **Subasta** equivalga a una "condición" o "irregularidad", como nos arguye **EPS**.

Todavía más, **EPS** arguye que si la **Junta de Subastas** le hubiese restado el 11.5% de IVU y el 10% de aranceles al precio de su oferta presentada en el Pliego de Subastas, resultaría el postor más bajo. No obstante, cabe recordar que el inciso (4) de la Sección 9 del **Reglamento Núm. 8873**, no permite —bajo ninguna circunstancia— efectuar cambios o modificaciones a una oferta después de haber sido abierta y leída en público. Por lo tanto, el tercer señalamiento de error no fue cometido.

A tono con lo antes expuesto, la adjudicación de la **Subasta** a **JPI** resulta razonable y se sostiene con la evidencia sustancial que obra en el expediente. En consecuencia, **confirmamos** la Carta Enmendada – Enmienda a la Resolución de Adjudicación que otorgó la *buena pro* a **JPI**.

### -IV-

Por los fundamentos antes expresados, **confirmamos** la Carta Enmendada – Enmienda a la Resolución de Adjudicación, que

favoreció a **JPI**. En consecuencia, queda sin efecto la paralización ordenada en este caso.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones